IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HUDSON EXCESS INSURANCE COMPANY <br>   Plaintiff, <br><br> VS. <br><br> GULF COAST ERECTORS INCORPORATED AND CONSOLIDATED CRANE & RIGGING, LLC <br>   Defendants. | § § § § § § § § § § § § § | C.A. NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE COURT:**

  **COMES NOW, HUDSON EXCESS INSURANCE COMPANY** (sometimes referred to as "Plaintiff" or "Hudson") and files its Original Complaint seeking a declaratory judgment and would respectfully show as follows:

### I.
### Parties

  1. Plaintiff Hudson Excess Insurance Company is an insurance company and corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of New York.

  2. Defendant Gulf Coast Erectors, Incorporated (sometimes referred to as "Erectors") is a corporation organized under the laws of Texas with its principal place of business in Texas at 5314 Spencer Highway, Pasadena, Harris County, Texas 77505. Erectors may be served by serving its registered agent and President, David Parmer at his residence at

1

1103 Briar Creek Drive, Friendswood, Texas 77546, or at the principal place of business of Erectors at 5314 Spencer Highway, Pasadena, Texas 77505, or anywhere else he may be found.

3. Defendant Consolidated Crane & Rigging, LLC (sometimes referred to as "Consolidated Crane") is a limited liability company organized under the laws of Texas with its principal place of business at 6370 Long Drive, Houston, Texas 77087. Defendant may be served by serving its registered agent Don Knight at 8100 Washington Avenue, #1000, Houston, Texas 77007, at the principal place of business of Consolidated Crane at 6370 Long Drive, Houston, Texas 77087, or anywhere else he may be found.

## II.
## Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship between the parties at the time of the filing of this Original Complaint. Also, the amount in controversy, exclusive of court costs, exceeds $75,000.

## III.
## Venue

5. This Court has venue under 28 U.S.C. § 1391 in that Erectors has its principal place of business in the Southern District of Texas, Houston Division, and the underlying lawsuit giving rise to the controversy is filed in Harris County, Texas.

## IV.
## Declaratory Judgment

6. This is a suit in which Plaintiff Hudson seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*

## V.
## Factual Background

7.     Defendant Gulf Coast Erectors has been named as a Defendant in a lawsuit pending under Cause No. 2019-81363; *Consolidated Crane & Rigging, LLC v. Gulf Coast Erectors Incorporated*; In the 133rd Judicial District Court of Harris County, Texas (the "Underlying Lawsuit"). Consolidated Crane is the Plaintiff in the Underlying Lawsuit. A copy of Plaintiff's Original Petition in the Underlying Lawsuit is attached hereto as Exhibit "1". The Underlying Lawsuit arises from the alleged contract for the lease of a crane, and the alleged total loss of the crane while under the control of Gulf Coast Erectors, which the Underlying Lawsuit alleges to have occurred on August 19, 2019[1] (the "Incident").

8.     On October 16, 2019, Erectors sent notice to Hudson that a demand had been asserted by Consolidated Crane. (See Exhibit "2") Hudson issued an Acknowledgment and then sent a subsequent reservation of rights to deny coverage for the claim on November 19, 2019. (See Exhibit "3") In that letter, Hudson expressly requested that the insured provide copies of any lawsuit that were subsequently filed for which the named insured asserted coverage existed under the Hudson Excess Policy discussed in the following Paragraphs 11 through 15.

9.     On November 8, 2019, the Underlying Lawsuit was filed against Erectors. Erectors failed to send notice of the Underlying Lawsuit to Hudson. Hudson first became aware of the Underlying Lawsuit when Consolidated Crane served a Subpoena Duces tecum upon Hudson through the Commissioner of Insurance on September 23, 2020. The Texas Department

---

[1] Plaintiff Hudson, in reciting in this Complaint the allegations of Plaintiff's Original Petition filed in the Underlying Lawsuit and the effect when outlining/addressing the provisions of the insurance policy discussed herein, does not waive, admit, or concede to any issue or matter alleged in the Underlying Lawsuit. Any reference to the pleadings is not in any way intended to assert those alleged facts are true or false, only what is alleged in the Petition.

of Insurance sent it to Hudson on October 5, 2020 and the Subpoena was received by Hudson on October 9, 2020. (See Exhibit "4")

10. In the Underlying Lawsuit, Consolidated Crane seeks damages from Erectors for the alleged total loss of its crane, lost profits, attorney's fees and exemplary damages. It alleges that Erectors was negligent, grossly negligent, and breached its contract with Consolidated Crane. (See Ex. "1", ¶¶ 11,12 and 13) In addition, Consolidated Crane has asserted that it qualifies as an "insured" under Erector's insurance. (See demand letter, Ex. "2".)

11. The Underlying Lawsuit alleges that at the time of the Incident, Erectors and Consolidated Crane were parties to a Rental Contract, whose terms stated:

> THE CUSTOMER (Gulf Coast Erectors) TO HAVE CONTROL – THE CUSTOMER SHALL HAVE SOLE AND EXCLUSIVE CONTROL IN DIRECTING THE MANNER AND DETAILS OF THE WORK BEING PERFORMED BY THE COMPANY (Consolidated Crane) AND ALL PERSONNEL PROVIDED BY THE COMPANY. FURTHER, THE COMPANY SHALL NOT BE LIABLE FOR DAMAGE TO PERSON OR PROPERTY AS A RESULT OF ANY NEGLIGENCE OF THE CUSTOMER IN DIRECTING THE USE OF RENTAL EQUIPMENT. IT IS EXPRESSLY UNDERSTOOD AND AGREED BY THE CUSTOMER THAT AT ALL TIMES WHILE WORKING UNDER THE DIRECTION OF THE CUSTOMER, ANY OPERATOR OF THE RENTAL EQUIPMENT OR OTHER PERSONNEL PROVIDED BY THE COMPANY SHALL BE DEEMED AN EMPLOYEE OF THE CUSTOMER. IT IS FURTHER UNDERSTOOD THAT NO PERSONNEL, WHILE WORKING UNDER THE DIRECTION OF THE CUSTOMER SHALL BE CONSIDERED A BORROWED SERVANT OR EMPLOYEE OF THE COMPANY. (See Exhibit "1", Paragraph 8)

12. Hudson issued an excess policy of insurance to Erectors described below. In October, 2019, when Hudson received the initial notice and request to defend against the demand, Hudson was notified that the required underlying CGL coverage had allegedly been canceled prior to the date of the Incident. Hudson asserts that neither Erectors nor Consolidated

4

Crane is entitled to any coverage, nor to collect any judgment or settlement against Erectors from Hudson.

## VI.
## Hudson's Excess Policy

13. Hudson Excess Insurance Company issued its Commercial Liability Excess Policy No. HXS 1000712 02 to the named insured Gulf Coast Erectors, Inc. for the policy period September 27, 2018 to September 27, 2019 (the "Excess Policy") See Exhibit "5". It provided a limit of liability of $5 million per occurrence. The Excess Policy provided coverage for any claim covered by the required underlying insurance, unless the terms and additional provisions of the Excess Policy modified or excluded that coverage. The Excess Policy's Schedule of Underlying Insurance included a general liability policy shown to be issued by First Mercury providing a $1 million per occurrence limit, and an auto liability policy with Employers Mutual providing a $1 million single limit.

14. The Excess Policy defines "you" and "your" as the named insured, but "the word 'insured' means any person or organization qualified as such under the 'controlling underlying insurance.'" The terms "we", "us" and "our" refer to Hudson. The Excess Policy's main insuring section states:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

5

> There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.
>
> **SECTION I – COVERAGES**
>
> **1. Insuring Agreement**
>
>   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.
>
>   We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".
>
>   . . .
>
>   b. This insurance applies to "injury or damage" that is subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".
>
> . . .

The Limit of Insurance is defined in Section II, and "only applies in excess of the 'retained limit'". *See* Section II.2.a.

15. The obligations of Hudson and the named insured Erectors are further defined in Section III – Conditions. It provides in pertinent part as follows:

6

> 7. **Maintenance Of/Changes To Controlling Underlying Insurance**
>
>    Any "controlling underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of aggregate limits in accordance with the provisions of such "controlling underlying insurance" that results from "injury or damage" to which this insurance applies.
>
>    Such exhaustion or reduction is not a failure to maintain "controlling underlying insurance". Failure to maintain "controlling underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect.
>
>    The first Named Insured must notify us in writing, as soon as practicable, if any "controlling underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "controlling underlying insurance" is changed.
>
>    . . .
>
> 10. **Loss Payable**
>
>     Liability under this Coverage Part does not apply to a given claim unless and until:
>
>     a. The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and
>
>     b. The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.
>
>     . . .

16.     The Excess Policy contains the following Definitions applicable to its provisions:

> **SECTION IV – DEFINITIONS**
>
> The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

7

1. "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".
2. "Controlling underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance".
3. "Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.
4. "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".
5. "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.
6. "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:
    a. Settlements, judgments, binding arbitration; or
    b. Other binding alternate dispute resolution proceeding entered into with our consent.

    "Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

17. The Excess Policy's insuring provisions are modified by the following Endorsements:

## EXCLUSION - SUBLIMITS

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE PART**

Section I, Paragraph b. is deleted and replaced with the following:
This insurance applies to "injury or damage" that is subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless a specific endorsement is issued with this policy.

All other terms and conditions remain unchanged.

. . .

8

# EXCLUSION – CROSS SUITS

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE PART**

Section I. Coverages, 2. Exclusions is amended and the following added:

Insurance provided under this coverage part does not apply to "injury or damage" or any other claim for damages initiated, alleged or caused, in whole or in part, that is brought about by any Insured, its employees or Additional Insured covered by this policy, against any other Insured, its employees or Additional Insured.

With respect to this exclusion, we shall have no duty or obligation under this insurance to defend, respond to, investigate or indemnify any Insured party for any such claim, demand or suit. We shall have no obligation to repay any person or organization who must pay any loss, cost or expense. All other terms and conditions of this policy remain unchanged

. . .

# CONTRACTORS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

The following exclusions are added to 2. Exclusions:

2. This insurance does not provide coverage for "injury or damage" to property which is owned by you, transported by you and/or in your care, custody or control. This exclusion applies even if the "controlling underlying insurance" provides coverage for such "injury or damage"

. . .

# EXCLUSION – SPECIFIED OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE PART**

SCHEDULE

| Description of Operations: | Location of Operations: | Date Added: |
|---|---|---|
| Operation and Rental of Tower Cranes By or On Behalf of the Insured | | 09/27/2018 |

Section I. Coverages, 2. Exclusions is amended and the following added:

9

> Insurance provided under this coverage part does not apply to "injury or damage" resulting from operations described in the schedule above. This exclusion applies regardless of whether such operations are conducted by you or on your behalf.
>
> Unless a "location" is specified in the Schedule above, this exclusion applies regardless of where such operations are conducted. If there is a specified location listed in the schedule above, this exclusion will apply only to the described ongoing operations that are conducted at that "location".
>
> For the purposes of this endorsement, the word "location" means premises on the same or connecting lots, or premises whose connection is interrupted only by a waterway, street or right-of-way of a railroad.
>
> All other terms and conditions of this policy remain unchanged

## VII.
## The Mercury Primary CGL Policy

18. First Mercury Insurance Company (sometimes referred to as "First Mercury") issued its CGL Policy No. TX-CGL-0000074337-02 to the named insured Gulf Coast Erectors, Inc. for the stated policy period of September 27, 2018 to September 27, 2019 (the "Primary Policy"). (See Exhibit "6") The Primary Policy provided a limit of liability of $1 million per occurrence, subject to a general aggregate of $2 million, and is listed on the schedule of Underlying Coverage on the Hudson Excess Policy.

19. The Primary Policy provided 2006 ISO Form Commercial General Liability Coverage with the insurer agreeing to "pay those sums that the insured becomes legally obligated to pay as damages because of…property damage…" where the coverage applies. It conferred upon First Mercury "the right and duty to defend the insured against any suit seeking those damages." The defense obligation did not apply where there was no coverage, and would end upon exhaustion of the policy limit paid toward judgments or settlements. In order for the insurance to apply, the property damage had to occur "during the policy period". (See I.1.b.(2))

20. The insuring provisions of the First Mercury policy are subject to the following general exclusions:

10

. . .

**b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a part other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**j.** **Damage To Property**

'Property damage' to:

. . .

**(4)** Personal property in the care, custody or control of the insured." **(Replaced by Endorsement)**

21. Pursuant to the Supplementary Payments, First Mercury agreed to pay "with respect to any claim we investigate or settle or any suit against an insured we defend…all

11

expenses we incur….." First Mercury further agreed that such expenses would be in addition to the limit and do not erode the limit.

22. The insuring provisions of the First Mercury policy are also subject to the following Endorsements:

### "POLICY DEDUCTIBLE ENDORSEMENT

. . .

**B.** Your policy may have a deductible amount on either a per claim, a per 'occurrence,' or a per injury basis. Your deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

(Coverage A – Per Claim - $5000)

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    . . .

    d. Under Supplementary Payments – Coverages A and B, to all amounts we pay in the defense and investigation of any claim or 'suit' to which this insurance applies.

**C.** The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any 'suits' seeking those damages; and

2. Your duties in the event of an 'occurrence,' claim, or 'suit'

apply irrespective of the application of the deductible amount.

. . .

### ON HOOK – CARE, CUSTODY, CONTROL AMENDATORY ENDORSEMENT

It is agreed that **SECTION I – COVERAGES, COVERAGE A PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS j.(4)** is deleted and replaced with the following:

Property damage to personal property in the care, custody or control of the insured is excluded except when the insured is hoisting, raising, lowering, or moving personal property of others with equipment that is owned, rented or leased to the insured.

With respect to coverage provided by this endorsement it is also agreed that **SECTION III – LIMITS OF INSURANCE** are amended and the following added:

The most we will pay under **COVERAGE A PROPERTY DAMAGE LLIABILITY** for claims made against you for property damage to personal property in the care, custody or control of the insured are subject to the following limits of liability and deductible:

| | |
|---|---|
| Each Occurrence Limit: | $250,000 |
| Aggregate Limit | $500,000 |
| Deductible | $5,000 |

. . .

The aggregate limit is the most we will pay under this endorsement as damages because of 'property damage' to personal property in the care, custody or control of the insured, and expenses incurred in the defense and adjustment of claims and 'suits' alleging damages to personal property in the care custody or control of the insured/

## VIII.
## Controversy And Declarations Sought

23. Incorporating the foregoing allegations by reference, Hudson would show that an actual controversy exists regarding its obligations, if any, to Erectors and/or to Consolidated Crane in respect of the Underlying Lawsuit.

### A. Hudson Owes No Duty To Defend Under Its Excess Policy

24. Plaintiff Hudson seeks a declaration from this Court that it has no duty or obligation under the Excess Policy to provide, or to pay costs of, a defense to Gulf Coast Erectors Incorporated in the Underlying Lawsuit.

25. Specifically, the Underlying Lawsuit alleges that the crane was used by Erectors at a construction site and that while under the "direction and control of Defendant Erectors", the crane was used to perform a lift and placement of personal property which ultimately fell onto the crane. See Exhibit "1".

26. Hudson would show that the allegations of the Underlying Lawsuit trigger the Primary Policy Endorsement providing coverage and a sublimit for personal property in the control of the named insured while the named insured was hoisting or moving personal property of others with equipment rented to the insured. (See Exhibit "6", "On Hook" endorsement) The Endorsement was an exception, and replaced the general exclusion for property damage to personal property in the care, custody or control of the insured. *Id.*, Exclusion j.4. The Hudson Excess Policy did not allow any sublimit, and expressly excluded coverage for any claim subject to a sublimit in the underlying coverage. (See Exhibit "5", Sublimits endorsement)

27. Hudson would show that the allegations of the Underlying Lawsuit trigger the Excess Policy's Exclusion for claims for property in the named insured's "care, custody or control." (See Exhibit "5", Contractor Amendatory Endorsement #2) The Excess Policy terms govern over the terms of any underlying policy where they conflict and may exclude coverage even if the "controlling underlying insurance" provides coverage for such "injury or damage". The Underlying Lawsuit alleges custody and control of the crane on the part of the named insured Erectors, and the lifting of personal property as the named insured's alleged conduct at

the work site. These alleged activities trigger the Excess Policy's Sublimit, and its Contractor exclusions. *Id.*

28. Defendant Consolidated Crane has asserted that it was an additional insured under the underlying coverage by virtue of its contract with Erectors. In the event Consolidated Crane is deemed to qualify as an insured under the First Mercury policy, it would also be deemed to qualify as an "insured" under the Excess Policy. In that event, the Exclusion - Cross Suits endorsement of the Excess Policy, which applies to claims for damage by one insured or additional insured against another insured or additional insured, would be triggered, and would exclude any coverage for such claim. (See Exhibit "5", Exclusion – Cross Suits endorsement)

29. Without waiving the foregoing, Hudson would show that its Excess Policy imposes no obligation to defend, or pay defense costs where those costs should have been born by the required scheduled underlying coverage. Only after the required underlying policy, or the insured (if the required coverage does not exist), has paid the full limit of $1 million in settlement or toward a judgment for a covered claim, are Hudson's obligations to begin paying any defense costs, or any indemnity, finally triggered. Pursuant to the Excess Policy Conditions, in the event the named insured failed to maintain the full coverage and limit required for the controlling underlying insurance, the insurance provided by the Excess Policy "will apply as if the 'controlling underlying insurance' were in full effect". (See Exhibit "5", Section III, 7) The First Mercury Primary Policy had a duty to defend that was in addition to the limit.

30. Hudson would show that its Excess Policy imposes no obligation to defend any lawsuit, such as the Underlying Lawsuit, the required underlying First Mercury policy was required to provide a defense. The named insured assumes those obligations to defend such lawsuit if it fails to maintain such underlying coverage. If the Primary Policy does not have

15

coverage due to reasons other than early cancellation, Hudson would show that its Excess Policy imposes no obligation to defend, regardless of the additional Excess Policy exclusions.

**B. Plaintiff Hudson Owes No Duty To Defend Erectors Or Indemnify Erectors Or Consolidated Crane For Any Settlement Or Judgment Related To The Underlying Lawsuit**

31. In addition, Plaintiff Hudson seeks a declaration from this Court that it has no obligation under the Excess Policy to defend Erectors, or to indemnify Erectors or Consolidated Crane for any damages that may be awarded in the Underlying Lawsuit. The allegations of the Underlying Lawsuit plainly fail to trigger any obligation under the Excess Policy to provide or pay for, a defense of the claim or indemnity for the alleged damages. The Underlying Lawsuit alleges facts that expressly trigger Exclusions contained in the Excess Policy, such as the Exclusion - Sublimits, the Contractors Amendatory Endorsement #2 Exclusion, and, potentially, the Exclusion – Cross Suits.

32. Hudson seeks a declaration from this Court that it has no obligation under the Excess Policy to defend or indemnify Erectors for any damages awarded in favor of Consolidated Crane or any other party against Erectors for any property damage to the crane leased to Erectors and used by it in its operations. In the alternative, Hudson seeks a declaration that its Excess Policy imposes no obligation to defend until the underlying insurer, or the insured if it failed to maintain such underlying insurance, has paid the sum of $1,000,000 toward the settlement of, or adverse judgment in, the Underlying Lawsuit.

**C. Plaintiff Hudson Owes No Duty To Defend Or Indemnify Under The Excess Policy If This Claim Arises Out Of The Use Of A Tower Crane**

33. Without waiving the foregoing, Plaintiff Hudson seeks a declaration from this Court that, if the operation alleged in the Underlying Lawsuit is deemed to include the use of a

tower crane, or if the damage alleged in the Underlying Lawsuit is deemed to be to a tower crane, Hudson requests a declaration from this Court that it has no obligation to defend, or to indemnify, the insured for the Underlying Lawsuit. Hudson seeks a declaration that the Exclusion/Specified Operations Exclusions in the Excess Policy apply to such damages, as they arise out of "operation and rental of tower cranes by or on behalf of the insured" "whether such operations are conducted by you or on your behalf". See Exhibit "5" – Exclusion – Specified Operations Exclusion.

## IX.
## Request For Judgment

34. In summary, Hudson Excess Insurance Company seeks a declaration from this Court that it has no duty or obligation under the Excess Policy to provide a defense to Erectors in the Underlying Lawsuit. The allegations of the Underlying Lawsuit trigger one or more provisions of the Excess Policy, and relieve Hudson of any obligation to provide any coverage for the claim. In addition, because the allegations of the Underlying Lawsuit seek damages which are excluded by the Excess Policy, Hudson seeks a declaration from the Court that it has no duty or obligation under the Excess Policy to indemnify Defendant Gulf Coast Erectors for any settlement, or for any adverse judgment, arising from the Underlying Lawsuit. Further, Plaintiff Hudson seeks a declaration that it has no duty to pay Consolidated Crane for any damages, attorney's fees or costs awarded to it for any judgment in the Underlying Lawsuit. In the alternative, Hudson requests a declaration that it has no present duty to defend Erectors, and has no duty to pay for any defense, or any settlement or judgment unless and until the sum of $1,000,000 has been paid by or for Erectors in a settlement, or by satisfaction of an adverse judgment in the Underlying Lawsuit.

**WHEREFORE, PREMISES CONSIDERED**, Hudson Excess Insurance Company prays that Defendant Gulf Coast Erectors Incorporated and Defendant Consolidated Crane & Rigging, LLC be served with process and upon final trial and determination hereof, this Court render a declaratory judgment in favor of Plaintiff Hudson Excess Insurance Company as requested above, and award Plaintiff Hudson Excess Insurance Company judgment that it has no liability to either Defendant for the claims asserted in the Underlying Lawsuit, and for such other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

By  /s/ Ken E. Kendrick
**KEN E. KENDRICK**
State Bar No. 11278500
kkendrick@ksklawyers.com

**ATTORNEYS FOR PLAINTIFF
HUDSON EXCESS INSURANCE
COMPANY**

**OF COUNSEL:**
**SUTTER & KENDRICK, P.C.**
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056
(713) 595-6000 – Telephone
(713) 595-6001 – Facsimile